UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

CHRISTINA DRAKE,

    Plaintiff,

v.                                     Case No: 8:18-cv-02257-T-17TGW

RANDY AVENT, individually and as
President of Florida Polytechnic University;
and TERRY PARKER, individually and as
Provost and Executive Vice President of
Florida Polytechnic University,

    Defendants.
_____/

**PLAINTIFF'S OPPOSITION MEMORANDUM TO
DEFENDANT PARKER'S MOTION TO DISMISS**

    Plaintiff Christina Drake files this memorandum in opposition to the motions to dismiss filed separately by Defendant Randy Avent (Dkt. 16) and Defendant Terry Parker (Dkt. 10).

## BACKGROUND

    Drake is a professor in the mechanical engineering department at Florida Polytechnic University. (Dkt. 1, ¶ 5.) Since her hiring in 2014, Drake has consistently received favorable performance reviews, she has received prestigious awards, and she has brought lucrative grant funding to the university. (*Id.* at ¶ 8.)

    In May and June 2018, the university terminated numerous employees including the university's sole mental health counselor. (*Id.* at ¶ 9.) Drake complained publicly that the university's personnel actions appeared to be retaliatory against whistleblowers and union members, and Drake warned about the risk of a student committing suicide due to inadequate mental health support and continuity. (*Id.* at ¶¶ 10, 11.) Tragically, on August 1, 2018, a university

student killed himself on campus. (*Id.* at ¶ 12.) On August 4, 2018, the *Tampa Bay Times* published an article titled, "At Florida Poly, a student suicide and a question: Could it have been prevented?" (*Id.* at ¶ 13.) The *Tampa Bay Times* article quoted Drake extensively and noted that she had spoken out publicly about student mental health care issues before the suicide. (*Id.* at ¶ 13.)

Less than two weeks later, the university notified Drake that her contract with the university would not be renewed after the current academic year. (*Id.* at ¶ 15.) Drake alleges that the defendants, Avent and Parker, made the decision to non-renew her employment, and that the defendants made that decision in retaliation against Drake for publicly speaking out about important matters of public concern. (*Id.* at ¶¶ 15, 16, 17.) But for the defendants' unlawful conduct, Drake's employment contract would have been automatically renewed for the 2019–2020 academic year. (*Id.* at ¶¶ 17, 18.)

The complaint asserts claims under 42 U.S.C. § 1983 against defendants in their official capacities (Count I) and in their individual capacities (Count II) for acting under color of law as officers of a public university to violate Drake's constitutional right to free speech. (Dkt. 1.) The complaint also asserts a claim against the defendants in their individual capacities for violating the free speech clause in the Florida Constitution (Count III). (*Id.*) As a remedy, the complaint seeks a declaration that defendants' conduct is unlawful and an order restraining the defendants from non-renewing Drake's employment contract or otherwise retaliating against Drake because of her protected speech. (*Id.*) The complaint also seeks compensatory and punitive damages, but only against defendants in their individual capacities. (*Id.*)

The defendants separately filed identical motions to dismiss arguing that (1) Drake's official capacity claims are barred by the Eleventh Amendment; (2) the defendants enjoy qualified

immunity against Drake's individual capacity claims; and (3) Drake's state constitutional claim is barred by sovereign immunity. As explained below, the defendants' motions should be denied.

## ARGUMENT

**I.  Drake's Official Capacity Claim Does Not Implicate the Eleventh Amendment Because It Is Limited to Prospective Equitable Relief.**

Through Count I of the complaint, Drake sues the defendants under 42 U.S.C. § 1983 in their official capacities. Defendants argue that Count I should be dismissed because it offends the Eleventh Amendment by seeking "retroactive injunctive relief." (Dkt. 10, 5.[1]) To be clear, the complaint seeks a declaration "that Defendants' actions are in violation of the First Amendment" and an injunction against "Defendants from non-renewing Plaintiff's annual employment contract or otherwise retaliating against Plaintiff because of her protected speech." (Dkt. 1, 6.) Defendants argue that the requested injunctive relief is retroactive in nature because *the decision* to non-renew Drake's employment contract has already been made. (Dkt. 10, 6.)

Under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), it is well established that "a suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis is not a suit against the state and, accordingly, does not violate the Eleventh Amendment." *Lewis v. Gov. of Alabama*, 896 F.3d 1282, 1292 (11th Cir. 2018). It is likewise well established that an order requiring the government to reinstate an employee to remedy a constitutional violation does not offend the Eleventh Amendment because such an order is primarily prospective in nature. *Kicklighter v. McIntosh Cty. Bd. of Commissioners*, 694 F. App'x 711, 715–16 (11th Cir. 2017); *Lane v. Cent. Alabama Cmty. Coll.*,

---

[1] Because defendants' motions are identical, Drake will conserve energy by citing only to Parker's motion (Dkt. 10).

772 F.3d 1349, 1351 (11th Cir. 2014); *Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir. 1995); *Lassiter v. Ala. A&M Univ., Bd. of Trs.*, 3 F.3d 1482, 1485 (11th Cir. 1993), vacated on other grounds, 28 F.3d 1146 (11th Cir. 1994).

Drake is still employed at the University. (Dkt. 1, ¶ 5.) She only recently received notice that her employment will terminate after the 2018–2019 academic year. (*Id.* at ¶ 15.) Drake's requested injunctive relief is obviously prospective because it seeks relief from an action which has not yet occurred.

Defendants miss the point when they argue that the injunctive relief would be retroactive because the *decision* to non-renew Drake's employment contract has already been made. (Dkt. 10, 6.) That decision could be un-made. But even if Drake's employment had already been terminated—or if her employment is terminated during the pendency of this litigation—even then the Court would still have the authority to declare that defendant's conduct to be unconstitutional and to order reinstatement. *See, e.g.*, *Lane v. Cent. Alabama Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014) ("We have determined previously that requests for reinstatement constitute prospective injunctive relief that fall within the scope of the *Ex parte Young* exception and, thus, are not barred by the Eleventh Amendment.") Defendants' argument is thus precluded by controlling law in this circuit.[2] Count I survives.

**II.     The Right of Public Employees To Speak Freely on Matters of Public Concern Is Clearly Established; Defendants Do Not Enjoy Qualified Immunity.**

Through Count II of the complaint, Drake sues the defendants under 42 U.S.C. § 1983 in their individual capacities. The defendants argue that Count II should be dismissed based on

---

[2] Notably, the defendants' motions do disclose this controlling law.

4

qualified immunity. They argue, apparently, that they did not have fair warning that it was unlawful to terminate a public employee in retaliation for her protected speech.

Under the doctrine of qualified immunity, a court may not award damages against a government official in his individual capacity unless the official violated a statutory or constitutional right that was "clearly established" at the time of the challenged conduct. *Lane v. Franks*, 134 S.Ct. 2369, 2381 (2014). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Id.*

When qualified immunity is raised at the pleading stage, the trial court must conduct this analysis while accepting the factual allegations in the complaint as true, construing the pleadings in the light most favorable to the plaintiff, and drawing all reasonable inferences in the plaintiff's favor. *Joseph v. Gee*, 708 F. App'x 642, 644 (11th Cir. 2018); *Carollo v. Boria*, 833 F.3d 1322, 1328 (11th Cir. 2016); *S.E.C. v. City of Miami*, 581 F. App'x 757, 758 (11th Cir. 2014); *King v. Bd. of Cty. Commissioners*, No. 8:16-CV-2651-T-33TBM, 2017 WL 1093647, at *7 (M.D. Fla. Mar. 23, 2017). When qualified immunity is asserted in a motion to dismiss, the questions for the court are whether, "(1) [the] complaint pleads a plausible claim that the defendant violated [the plaintiff's] federal rights (the 'merits' prong), and [whether] (2) precedent in this Circuit at the time of the alleged violation 'clearly established' those rights (the 'immunity' prong)." *Carollo v. Boria*, 833 F.3d 1322, 1328 (11th Cir. 2016) (internal citations omitted). Count II of Drake's complaint satisfies both of those prongs.

### A. *Count II States a Plausible Claim for Retaliation Based on Protected Speech.*

Drake has pled facts sufficient to state a claim that the defendants violated her constitutional free speech rights. "Under the First Amendment to the Constitution of the United States, a public employee has a right to freedom of speech on matters of public concern. It is

5

unlawful for a public employer to take action against a public employee because the employee exercises [his/her] First Amendment rights by speaking on a matter of public concern." Eleventh Circuit Pattern Jury Instructions, Civil Cases (2018), § 4.1 Public Employee – First Amendment Claim – Discharge or Failure to Promote – Free Speech on Matter of Public Concern. The elements for this cause of action derive primarily from *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) and *Garcetti v. Ceballos*, 547 U.S. 410 (2006).

Drake's complaint established each of the elements of this claim. First, the complaint alleges that Defendants acted under color of law using their authority as the administrators of a public university. (Dkt 1, ¶ 29.) Second, the complaint alleges that Drake engaged in protected speech, for example by speaking publicly before the Florida Board of Governors for the State University System and communicating with the *Tampa Bay Times* on matters of public concern. (*Id.* at ¶ 10, 11, 13, 27.) Third, Drake has pled with sufficient certainty that she will suffer an adverse employment action, having been formally notified that her employment contract will be non-renewed after the 2018–2019 academic year. (*Id.* at ¶ 15.) Fourth, the complaint alleges Drake's protected speech was a motivating factor in defendants' decision to non-renew Drake's employment with the university (*id.* at ¶ 28)—a conclusion which is supported by proximate timing and an allegation of direct evidence (*id.* at ¶ 14). Fifth, the complaint alleges that Drake has suffered and will suffer injury. (*Id.* at ¶ 21.) Nothing more is required at the pleading stage.

Defendants take issue only with the second and fourth elements. As to the second element, the defendants claim that Drake has not adequately pled conduct that amounts to protected speech because, they claim, it is not clear whether Drake was speaking as a citizen as opposed to an employee of the university. (Dkt. 10, 7.) As to the fourth element, defendants claim that Drake has

6

not plausibly pled that her protected speech was a motivating role in the defendants' decision to non-renew her employment. (Dkt. 10, 8.)

### 1. *Protected Speech Analysis*

To determine whether a public employee has engaged in constitutionally protected speech, the Court first examines whether the employee spoke as a public employee pursuant to her official duties or as a private citizen on matters of public concern. *Fernandez v. Sch. Bd. of Miami-Dade Cty., Fla.*, 898 F.3d 1324, 1329 (11th Cir. 2018), citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). If Drake spoke pursuant to her official duties, her speech would not necessarily be protected. *Id.* If, however, Drake spoke as a private citizen on a matter of public concern, the analysis then proceeds to whether the defendants had an adequate justification to restrict her speech. *Id.*

Whether a public employee spoke as an employee or a private citizen "turns on whether the speech 'owes its existence to a public employee's professional responsibilities.'" *Carollo v. Boria*, 833 F.3d 1322, 1329 (11th Cir. 2016), quoting *Garcetti*, 547 U.S. at 421. Speech involves matters of public concern "when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Lane v. Franks*, 134 S. Ct. 2369, 2380 (2014).

The complaint here states that Drake, a mechanical engineering professor, spoke out publicly about the university's unlawful employment practices. (Dkt. 1, ¶ 10.) Drake appeared at a public meeting of the Board Governors and spoke about the university's retaliation against whistleblowers and union members and warned about inadequate student mental health services.

(*Id.* at ¶ 11.) Finally, she spoke to a newspaper reporter, who published an article quoting her, about a campus suicide and the university's disregard for student mental health. (*Id.* at ¶ 13.)

The defendants argue that the complaint is defective because it does not contain the magic words that Drake spoke in her capacity as an individual rather than as a university employee. (Dkt. 10, 7.) But that conclusion—that Drake spoke as an individual and not pursuant to any official duties—is the most reasonable inference from Drake's pleadings. It would not be the ordinary assumed job functions for a university professor to have to appear before a public board and communicate with journalists to discuss retaliation in other departments and student mental health. Nor are the topics on which Drake spoke related to her job in the mechanical engineering department. Rather, Drake spoke about topics that are quintessential matters of public concern: government misconduct and public safety. Drake was not publicizing her own personal grievances; she was advocating for employees in other departments who had been wrongfully terminated and she was advocating for the safety of students.

At the pleading stage, it is not Drake's burden to disprove the university's potential defenses. She need not attach her job description for the purpose of showing that she was not speaking pursuant to any of her official duties. *See Carollo v. Boria*, 833 F.3d 1322, 1330 (11th Cir. 2016) ("It is not appropriate at the motion to dismiss stage for us to interpret the Municipal Charter's ambiguous job description for the City Manager."). Her burden at this stage is simply to allege a "plausible" claim—which she has done.

### 2. *Pickering Balancing*

Once it is found that a public employee engaged in protected speech, a court may inquire into whether the government had an "adequate justification" to regulate the employee's speech. Government employers may have a legitimate interest in the effective and efficient fulfillment of

their responsibilities to the public, including promoting efficiency and integrity in the discharge of official duties, and maintaining proper discipline in public service. *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014), citing *Connick v. Myers*, 461 U.S. 138, 150–151 (1983). However, "a stronger showing" of government interest will be necessary if the employee's speech more substantially involves matters of public concern. *Id.*

Here, as in *Lane v. Franks*, "the employer's side of the *Pickering* scale is entirely empty: Respondents do not assert, and cannot demonstrate, any government interest that tips the balance in their favor." *Id.* "The Defendants have not included any arguments regarding this prong of the First Amendment analysis." *King v. Bd. of Cty. Commissioners, Polk Cty., Fla.*, Case No. 8:16-CV-2651-T-33TBM, 2017 WL 1093647, at *6 (M.D. Fla. Mar. 23, 2017).

### 3. Causation Analysis

An employee claiming speech retaliation must ultimately prove that their protected speech was a "motivating factor" in the employer's decision. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977). The complaint plausibly alleges that Drake's protected speech was a motivating factor in defendants' decision to non-renew her employment. (Dkt. 1, ¶ 28.) This causation allegation is supported by the proximate timing of Drake's protected speech and the notice of her adverse employment action. The causation allegation is further supported by an allegation that, immediately following publication of the *Tampa Bay Times* article, the defendants "expressed anger toward Plaintiff Drake for speaking out and warned other faculty against similarly speaking out." (*Id.* at ¶ 14.)

Defendants argue that the complaint is defective by not adequately proving causation: "It is entirely possible, and indeed, probable, that these terminations and the facts of Plaintiff's own

notice of non-renewal were the result of legitimate business restructuring activities by the University. The complaint does not foreclose, or even address, this possibility . . ." (Dkt. 10 at 8.)

The defendants confuse their burden on a motion to dismiss. They must accept all factual allegations in the complaint as true and give Drake the benefit of all reasonable inferences. Whether or not Drake's protected speech was a motivating factor in the defendants' adverse action is a question of fact, and thus not ordinarily susceptible to dismissal at the pleading stage. *King v. Bd. of Cty. Commissioners*, No. 8:16-CV-2651-T-33TBM, 2017 WL 1093647, at *7 (M.D. Fla. Mar. 23, 2017). Drake has met her burden by pleading allegations that plausibly state a claim for free speech retaliation.

### B. *The Right of a Public Employee To Be Free From Retaliation For Her Public Statements on Matters of Public Concern Is Clearly Established.*

A public official is not entitled to qualified immunity if "binding opinions from the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the highest court in the state where the action is filed ... gave [the defendants] fair warning that [their] treatment of [the plaintiff] was unconstitutional." *Carollo v. Boria*, 833 F.3d 1322, 1333 (11th Cir. 2016). The Supreme Court and the Eleventh Circuit have repeatedly held that a public employer may not retaliate against an employee who speaks out as a citizen on matters of public concern. *Id.*

"The law is clearly established that a public employer may not retaliate against an employee for an employee's exercise of constitutionally protected speech." *Cook v. Gwinnett Cty. Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005). Defendants do not and cannot seriously argue otherwise. Nor do defendants argue that any aspect of Drake's speech was so unusual such that the defendants did not have fair warning that their retaliation against her would be unlawful. Defendants are not entitled to qualified immunity. Count II survives.

### III. Defendants Cannot Use the Eleventh Amendment To Avoid Individual Liability for the State Law Claims.

Count III of the complaint alleges that the defendants, in their individual capacities, also violated the free speech clause in the Florida Constitution. Defendants assert that the Eleventh Amendment prevents this Court from enforcing the Florida Constitution. (Dkt. 10, 8.)

The Eleventh Amendment does not protect the defendants in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991) (holding that the Eleventh Amendment does not pose any barrier to suits against state officials in their individual capacity). To the extent that Drake's federal claims survive, the Court has the authority to exercise supplemental jurisdiction over Drake's state law claims. See *Hall v. Jarvis*, Case No. 3:10–cv–442–J–99MMH–TEM, 2011 WL 971125 *12 (M.D. Fla. Mar. 2, 2011).

Defendants also argue that the Court should dismiss Count III because the Court does not have the authority to award damages for violations of the Florida Constitution. As with Drake's official capacity claims, however, the Court has the authority to enter injunctive relief to enforce the state law claims. *Abad v. City of Marathon, FL*, 472 F. Supp. 2d 1374, 1382 (S.D. Fla. 2007) (denying a motion for summary judgment in favor of the defendant as to claim under Florida Constitution because the complaint did not seek only damages); *Depaola v. The Town of Davie, Fla.*, 872 So. 2d 377, 380 (Fla. 4th DCA 2004) (holding that violations of the Florida Constitution are enforceable through injunctive relief). Count III survives.

### CONCLUSION

Plaintiff respectfully requests the Court to deny the defendants' motions to dismiss and order the defendants to answer the complaint.

Dated: November 27, 2018.

Respectfully submitted,

*/s/ Eric Lindstrom*
Eric Lindstrom
FL Bar No. 104778
Heidi Parker
FL Bar No. 1008110
EGAN, LEV, LINDSTROM & SIWICA, P.A.
Post Office Box 2231
Orlando, Florida 32802
(407) 422-1400
elindstrom@eganlev.com
hparker@eganlev.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished this 27th day of November 2018, by CM/ECF electronic filing to the Clerk of the Court and to the following: Thomas Gonzalez, Thompson, Sizemore, Gonzalez & Hearing, P.A., P.O. Box 639, Tampa, Florida 33602; tgonzalez@tsghlaw.com.

*/s/ Eric Lindstrom*
Eric Lindstrom
