UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTINA DRAKE,

    Plaintiff,

v.

Case No.: 8:18-cv-2257-EAK-TGW

RANDY AVENT, *individually and as President of Florida Polytechnic University*, and TERRY PARKER, *individually and as Provost and Executive Vice President of Florida Polytechnic University*,

    Defendants.

## ORDER

Plaintiff Christina Drake sues Defendants Randy Avent, President of Florida Polytechnic University ("**FPU**"), and Terry Parker, Provost and Executive Vice President of FPU, for violation of her federal and Florida free speech rights. (Doc. 1). Defendants move to dismiss. (Docs. 10, 16). Drake opposes. (Doc. 18). The motions are **GRANTED-IN-PART and DENIED-IN-PART**.

## I. Background

FPU hired Drake as a professor in FPU's mechanical engineering department in 2014. (Doc. 1 at ¶5). Since her hiring, Drake has received favorable performance reviews and prestigious awards and brought lucrative grant funding to FPU. Id. at ¶8.

In May and June of 2018, FPU terminated numerous employees, including its sole mental health counselor. Id. at ¶9. On June 28, 2018, Drake appeared before a

public meeting of the Board of Governors for the State University System of Florida ("**Board of Governors**"). Id. at ¶11. At the meeting, Drake spoke out against what she perceived to be FPU's retaliatory termination of whistleblowers and union members. Id. In addition, Drake warned the Board of Governors of what she perceived to be a risk of student suicide due to FPU's inadequate provision of mental healthcare services to students. Id.

On August 1, 2018, a FPU student committed suicide on campus. Id. at ¶12. Three days later, the Tampa Bay Times published an article titled, "At Florida Poly, a student suicide and a question: Could it have been prevented?". Id. at ¶13. A Tampa Bay Times reporter interviewed Drake for the article. Id. Drake is quoted in the article as stating, "We have a campus makeup that is a ticking time bomb [for mental health issues]." Id. Also, the article notes Drake's previous warning to the Board of Governors. Id. Immediately after the Tampa Bay Times published the article, Defendants expressed anger towards Drake for speaking out and warned other FPU employees against doing the same. Id. at ¶14.

On August 15, 2018, Parker notified Drake that Drake's annual employment contract would not be renewed following the end of the 2018-2019 academic calendar year. Id. at ¶¶15–16. Avent approved Parker's decision. Id. at ¶16.

## II. Legal Standard

Rule 8 of the Federal Rules of Civil Procedure requires complaints to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12 allows the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, a plaintiff must state a claim that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The Court must accept all factual allegations in the complaint as true but doesn't credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Id. Additionally, dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the complaint's factual allegations, a dispositive legal issue precludes relief. Neitzke v. Williams, 490 U.S. 319, 326–27 (1989).

## III. Discussion

Drake alleges Defendants violated her federal (Counts I and II) and Florida (Count III) free speech rights by using their authority as officers and administrators of a public university to retaliate against her for publicly speaking out on matters of public

concern.[1] (Doc. 1 at ¶¶22–34). Counts I and II are brought against Defendants in their official and individual capacities, respectively, pursuant to 15 U.S.C. § 1983. Id. at ¶¶22–30. Count III is brought against Defendants in their individual capacities, only, pursuant to Article I, Section 4, of the Florida Constitution. Id. at ¶¶31–34.

Drake seeks a declaration that Defendants' conduct is unlawful and an order enjoining Defendants from non-renewing Drake's annual employment contract or otherwise retaliating against Drake because of her protected speech. Id. at 6. Drake also seeks an award of compensatory and punitive damages, but only against Defendants in their individual capacities. Id.

Defendants levy three arguments in support of dismissal:

1. The Eleventh Amendment to the United States Constitution bars Drake's § 1983 official capacity claims;

2. Defendants are qualifiedly immune from Drake's § 1983 individual capacity claims; and

3. The Eleventh Amendment bars Drake's state constitutional claim.

(Docs. 10, 16). The Court will address each argument in turn below.

---

[1] Drake conclusorily alleges, in passing, that Defendants non-renewed her employment, in part, because she made public statements concerning "the quality of [FPU's] library system." (Doc. 1 at ¶¶20, 23, 27, 32). However, Drake neither alleges where or to whom she made those statements nor the content of those statements. Thus, Drake's retaliation claims based on her public statements concerning the quality of FPU's library system are not plausibly pleaded, and the Court will dismiss the same.

### A. The Eleventh Amendment Doesn't Bar Drake's § 1983 Official Capacity Claims.

The Eleventh Amendment bars money damages and *retroactive* injunctive relief against state officials in their official capacity for violations of federal law. Kentucky v. Graham, 473 U.S. 159, 165 (1985); Edelman v. Jordan, 415 U.S. 651, 666–67 (1974). However, the Eleventh Amendment doesn't bar *prospective* injunctive relief governing the official's future conduct. See Grizzle v. Kemp, 634 F.3d 1314, 1319 (11th Cir. 2011) (citing Ex parte Young, 209 U.S. 123, 168 (1908); Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004)).

Defendants argue the Court should dismiss Count I of the complaint because Drake's request that the Court enjoin Defendants from non-renewing her employment offends the Eleventh Amendment by seeking retroactive injunctive relief. (Doc. 10 at 5–6); (Doc. 16 at 5–6). Defendants characterize Drake's requested injunctive relief as retroactive because Defendants previously decided on August 15, 2018, to non-renew Drake's employment, and therefore Drake seeks to prevent an action that has already occurred. Id. The Court disagrees.

As of the date of this Order, Drake is still employed at FPU. In deciding to non-renew Drake's employment for the upcoming 2019-2020 academic calendar year, Defendants have simply decided they won't take certain action *in the future*. Thus, Drake's request to prevent Defendants from following through on that decision can't reasonably be characterized as retroactive relief. Rather, such relief is necessarily

prospective. But even if Drake's employment at FPU had already terminated – or if her employment terminates during the pendency of this litigation, which is likely – the outcome is the same. To be sure, the Eleventh Circuit has definitively held that reinstatement constitutes prospective injunctive relief not barred by the Eleventh Amendment. See Kicklighter v. McIntosh Cnty. Bd. of Comm'rs, 694 F. App'x 711, 715–16 (11th Cir. 2017); Lane v. Cent. Ala. Cmty. Coll., 772 F.3d 1349, 1351 (11th Cir. 2014); Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation, 49 F.3d 1490, 1503 (11th Cir. 1995).

Count I survives.

**B. Defendants Are Not Entitled to Qualified Immunity on Drake's § 1983 Individual Capacity Claims at this Stage of the Proceedings.**

Qualified immunity shields government officials acting within their discretionary authority from money damages unless a plaintiff can show that the official violated a clearly established constitutional right. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citation omitted). "A government official asserting a qualified immunity defense bears the initial burden of showing 'he was acting within his discretionary authority.'" Glasscox v. Argo, City of, 903 F.3d 1207, 1213 (11th Cir. 2018) (quoting Skop v. City of Atlanta, 485 F.3d 1130, 1136 (11th Cir. 2007)). After the official makes this showing – and here it's undisputed – "the burden shifts to the plaintiff to show that '(1) the [official] violated a constitutional right, and (2) this right

was clearly established at the time of the alleged violation.'" <u>Id.</u> (quoting <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1264 (11th Cir. 2004)).

*1. Drake Has Plausibly Alleged a Constitutional Violation.*

A public employer can't take adverse employment action against a public employee in retaliation for speech protected by the First Amendment. See <u>Alves v. Bd. of Regents</u>, 804 F.3d 1149, 1158 (11th Cir. 2015) (citation omitted). To state a plausible First Amendment retaliation claim and survive a motion to dismiss, an employee must allege facts sufficient to permit the district court to draw the reasonable inference that (1) her speech was protected, (2) she suffered an adverse employment action, and (3) her speech was a motivating factor in the employer's decision to take adverse employment action against her. <u>Castle v. Appalachian Tech. Coll.</u>, 631 F.3d 1194, 1197 (11th Cir. 2011). Defendants take issue with the first and third prongs. (Doc. 10 at 6–8); (Doc. 16 at 6–8).

With respect to prong one, a public employee's speech is protected if (1) she spoke as a citizen on a matter of public concern, and (2) her interests as a citizen in commenting on the matters of public concern outweigh the legitimate interests of the employer in the effective and efficient control of the workplace and fulfillment of its responsibilities to the public. See <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418 (2006); <u>Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Ill.</u>, 391 U.S. 563, 568 (1968). See also <u>Lane v. Franks</u>, 573 U.S. 228, 235–37 (2014); <u>Connick v. Myers</u>, 461 U.S. 138, 140–42 (1983); <u>Cook v. Gwinnett Cnty. Sch. Dist.</u>, 414 F.3d 1313, 1318

(11th Cir. 2005). Defendants argue Drake has failed to plausibly allege that she spoke as a citizen, as opposed to a FPU employee. (Doc. 10 at 6–8); (Doc. 16 at 6–8). The Court disagrees.

The Supreme Court distinguished between employee speech and citizen speech in Garcetti. 547 U.S. at 418–21. To receive protection, a public employee's speech must have been made in her capacity as a citizen. Id. at 418. When a public employee speaks pursuant to her "official duties," she isn't speaking as a citizen for First Amendment purposes, and her communications aren't insulated from employer discipline. Compare id. at 421 (holding that a state prosecutor's internal memo, which he prepared as part of his routine job duties, criticizing his office's handling of a search warrant was not protected speech that could support a First Amendment retaliation claim) with Pickering, 391 U.S. at 568 (holding that a teacher's letter to the editor of a local newspaper concerning his school's budget was protected speech that could support a First Amendment retaliation claim).

As alleged in the complaint, Drake's speech included statements made to the Board of Governors and a Tampa Bay Times reporter concerning what can generally be characterized as university personnel decisions and student safety. That Drake failed to specifically allege she made those statements in her capacity as a citizen isn't fatal to her claim. Assuming the facts alleged in the complaint are true, and construing all reasonable inferences in Drake's favor, speaking to a public board and a local newspaper reporter on issues like university personnel decisions and student safety

isn't ordinarily within the scope of the duties of a mechanical engineering professor. Further, although Drake may have acquired the information she shared because of her role as a professor at FPU, "[t]he mere fact that a citizen's speech concerns information acquired by virtue of [her] public employment does not transform that speech into employee – rather than citizen – speech." Lane, 573 U.S. at 240. Rather, "[t]he critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of an employee's duties." Id. Here, the most reasonable inference is that it isn't. Drake has plausibly alleged she spoke in her capacity as a citizen.

With respect to prong three, an employee alleging a First Amendment Retaliation claim must ultimately prove that her protected speech was a substantial motivating factor in the employer's decision to take adverse employment action against her (*i.e.*, a causal connection). Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Moss v. City of Pembroke Pines, 782 F.3d 613, 618 (11th Cir. 2015). Defendants argue that Drake has failed to plausibly allege a causal connection between her speech and Defendants' decision to non-renew her employment. (Doc. 10 at 7–8); (Doc. 16 at 7–8). The Court disagrees.

Initially, the Court notes that whether an employee's protected speech was a substantial motivating factor in the employer's decision to take adverse employment action against her is a question of fact and, ordinarily, not susceptible to determination at the motion to dismiss stage. See Moss, 782 F.3d at 618; Anderson v. Burke Cnty., Ga., 239 F.3d 1216, 1219–20 (11th Cir.2001). See also King v. Bd. of Cnty. Comm'rs,

Polk Cnty., Fla., No. 8:16-cv-2651-T-33TBM, 2017 WL 1093647, at *6 (M.D. Fla. Mar. 23, 2017) (Covington, J.). Further, Drake's causation allegations consist of both direct evidence (Defendants' expressing anger towards Drake immediately after publication of the Tampa Bay Time article) and circumstantial evidence (Defendants' non-renewing Drake's employment one month after she spoke at the Board of Governor's meeting and less than two weeks after publication of the Tampa Bay Time article) of Defendants' retaliatory motive. (Doc. 1 at ¶¶11, 13–15). These allegations are sufficient. Drake has plausibly alleged a causal connection between her speech and Defendants' decision to non-renew her employment.

   *2. Drake's Constitutional Right to be Free from Retaliation for Engaging in Protected Speech was Clearly Established.*

In determining whether a constitutional right was clearly established, the Eleventh Circuit has held that the relevant inquiry is whether "binding opinions from the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the highest court in the state where the action is filed . . . gave [the defendant] fair warning that his treatment of [the plaintiff] was unconstitutional." Merricks v. Adkisson, 785 F.3d 553, 559 (11th Cir. 2015). Defendants' motion doesn't address this part of the qualified immunity analysis.

Well before Defendants decided to non-renew Drake's employment, the Supreme Court and Eleventh Circuit recognized a public employee's clearly established right to speak on matters of public concern that are outside her job duties.

10

See Carollo v. Boria, 833 F.3d 1322, 1334–35 (11th Cir. 2016) (citing Pickering, 391 U.S. at 563; Garcetti, 547 U.S. at 410). See also Cook, 414 F.3d at 1318 ("The law is clearly established that a public employer may not retaliate against an employee for an employee's exercise of constitutionally protected speech."). Accepted as true, Drake's allegations that Defendants' intentionally retaliated against Drake, a mechanical engineering professor, for publicly speaking out about what she perceived to be FPU's unlawful employment practices towards other employees and inadequate provision of mental healthcare services to students[2] plausibly establish a violation of Drake's clearly established First Amendment rights.

Count II survives.

**C. The Eleventh Amendment Bars Drake's State Constitutional Claim.**

The Eleventh Amendment bars federal courts from enjoining state officials from violating state law. See Nordlinger v. Hahn, 505 U.S. 1, 27 (1992); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984). See also Burch v. Apalachee Cmty. Mental Health Servs., 840 F.2d 797, 801 n. 8 (11th Cir. 1988); In re Ohio Execution Protocol Litig., 709 F. App'x 779, 785–86 (6th Cir. 2017); Taylor v. Alabama, 95 F. Supp. 2d 1297, 1320 (M.D. Ala. 2000) (De Ment, J.); Hall v. Jarvis,

---

[2] Drake alleges these issues constitute matters of public concern. (Doc. 1 at ¶¶23, 27, 32). Defendants don't challenge Drake's allegations.

11

No. 3:10-cv-442-RBD-TEM, 2011 WL 971125, at *6 (M.D. Fla. Mar. 2, 2011) (Dalton, J.).

Because Drake seeks to enjoin Defendants from violating the free speech provisions of the Florida constitution (*i.e.*, state law), Defendants are immune from liability under the Eleventh Amendment, and Drake's claim is barred.

Count III is due to be dismissed.

IV. **Conclusion**

Accordingly, it is

**ORDERED** that Defendants' motions to dismiss (Docs. 10, 16) are **GRANTED-IN-PART and DENIED-IN-PART** as follows:

1. Defendants' motions are **GRANTED** with respect to Drake's retaliation claims based on her public statements concerning the quality of FPU's library system, and those claims are **DISMISSED**;

2. Defendants' motions are **GRANTED** with respect to Count III of the complaint, and Count III is **DISMISSED**;

3. Defendants' motions are otherwise **DENIED**; and

4. Defendants shall answer the complaint within fourteen (14) days from the date of this Order.

12

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 3rd day of May, 2019.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel/Parties of Record